## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

LOUISE TRAUMA CENTER LLC,

       *Plaintiff*,

      v.

CHAD WOLF, *et al.*,

       *Defendants*.

No. 20-cv-2348 (DLF)

## <u>MEMORANDUM OPINION</u>

Before the Court is plaintiff Louise Trauma Center's motion for attorney's fees, Dkt. 55. For the reasons that follow, the Court will deny the motion.

### I.      BACKGROUND

The Louise Trauma Center (the "Center") alleges it is a "nonprofit organization dedicated to raising awareness about immigrant women who have suffered from gender-based violence." Compl. at ¶ 4, Dkt. 1.  Between September 2019 and April 2020, the Center made nine Freedom of Information Act ("FOIA") requests: one to Immigration and Customs Enforcement ("ICE") and eight to the United States Citizenship and Immigration Services ("USCIS").  The requested records pertained to the training of immigration-related federal employees, mostly asylum officers.  *E.g.*, *id.* at ¶ 49 (requesting records concerning "field training for staff at Newark Asylum Office" and "all records that are used to train and re-train asylum officers at Newark Asylum Office").  On August 25, 2020, the Center filed this action.  *Id.* at 1.  Over the course of the next several years, the parties negotiated and resolved all the Center's requests; in the end, ICE and USCIS released 20,206 pages' worth of responsive records.  *See* Mot. for Att'y Fees at 1, Dkt. 55.  The Center now moves for attorney's fees. *Id.*

## II.   LEGAL STANDARDS

To receive attorney's fees under FOIA, a plaintiff must be (1) eligible for and (2) entitled to them.  *See* 5 U.S.C. § 552(a)(4)(E)(i).  A plaintiff is eligible if it "substantially prevailed" in the litigation, *id.* , meaning it "obtained relief through either— (I) a judicial order, or an enforceable written agreement or consent decree; or (II) a voluntary or unilateral change in position by the agency, if the complainant's claim is not insubstantial," *id.* § 552(a)(4)(E)(ii).  Second, the plaintiff must be entitled to attorney's fees.  *McKinley v. Fed. Housing Fin. Agency*, 739 F.3d 707, 710 (D.C. Cir. 2014).  "Four non-exclusive factors typically govern the entitlement inquiry: (1) the public benefit derived from the case; (2) the commercial benefit to the plaintiff; (3) the nature of the plaintiff's interest in the records; and (4) the reasonableness of the agency's withholding of the requested documents."  *Id.* at 711 (internal quotation marks omitted).  Further, the Court may award only "reasonable" attorney's fees.  5 U.S.C. § 552(a)(4)(E)(i).  The plaintiff bears the burden of demonstrating that its requested fees are reasonable.  *Jud. Watch v. DOJ*, 878 F. Supp. 2d 225, 238 (D.D.C. 2012)

## III.   ANALYSIS

### A.   Eligibility

The Center is eligible for attorney's fees if it "substantially prevailed" in the litigation, meaning either that the Court ruled in its favor or that the "institution and prosecution of the litigation caused the agency to release the documents obtained."  *Grand Canyon Tr. v. Bernhardt*, 947 F.3d 94, 96–97 (2020) (alterations omitted); *see* 5 U.S.C. § 552(a)(4)(E)(i).  The latter occurred here.  In their September 2020 answer, USCIS and ICE admitted that no determination had been made on any of the Center's requests.  *E.g.*, Answer, at ¶ 9, Dkt. 11.  Four weeks later, the agencies reported that several parts of their search were complete and that the rest was

underway, with the first records to be released in less than a month.  *See* Joint Status Report of Oct. 23, 2020, Dkt. 12.  Ultimately, all responsive records were released.

The commencement of this litigation is the most natural explanation for the sudden movement on the Center's FOIA request.  To be sure, "the mere filing of the complaint and the subsequent release of the documents is insufficient to establish causation."  *ACLU v. DHS*, 810 F. Supp. 2d 267, 274 (D.D.C. 2011).  But the D.C. Circuit has not ruled out that "a sudden acceleration of production" may prove causation.  *Grand Canyon Tr.*, 947 F.3d at 97–98 (internal quotation marks omitted).  Here, the agencies do not offer a plausible alternative explanation for the immediate action on the Center's FOIA request, other than that a backlog of FOIA requests postponed their pre-filing response.  *See* Opp'n to Mot. at 4–5, Dkt. 61.  But despite the backlog, the agencies turned to the Center's requests as soon as this litigation commenced.  The Court thus concludes that the Center "substantially prevailed" and is eligible for attorney's fees.

## B. Entitlement

The Court considers four factors to determine whether the Louise Trauma Center is entitled to attorney's fees: "(1) the public benefit derived from the case; (2) the commercial benefit to the plaintiff; (3) the nature of the plaintiff's interest in the records; and (4) the reasonableness of the agency's withholding of the requested documents."  *McKinley*, 739 F.3d at 710 (internal quotations marks omitted).  The parties agree that the first factor favors the Louise Trauma Center.  *See* Opp'n at 5.

On balance, the second and third factors favor the plaintiff.  These factors, which are closely related and often considered together, help the Court gauge whether the plaintiff has "sufficient private incentive to seek disclosure without attorney's fees."  *Davy v. CIA*, 550 F.3d 1155, 1160 (D.C. Cir. 2008) (internal quotation marks omitted).  Specifically, the factors "weigh

against an award to a plaintiff who seeks disclosure for a commercial benefit or out of other personal motives and instead favor non-profit organizations which aim to ferret out and make public worthwhile, previously unknown government information." *Urban Air Initiative, Inc. v. EPA*, 442 F. Supp. 3d 301, 316 (D.D.C. 2020) (alterations, citations, and internal quotation marks omitted).

The Center holds itself out as a "nonprofit organization" that works on the public-interest project of analyzing and fighting "gender-based violence." Compl. at ¶ 4. The government raises a question as to the Center's status as a non-profit organization, noting that is has not registered as such with the IRS. Opp'n at 6. There is no evidence, however, that the Center is a well-resourced private company or is primarily seeking disclosure to obtain a commercial benefit. Moreover, there is no tension between the Center's status as an LLC and its claim that it is a "nonprofit organization"—under the D.C. Code, an LLC "may have any lawful purpose, regardless of whether for profit." DC Code § 29–801.04(b). Thus, the Center passes the test's second and third factors.

The government also posits, as it has done in earlier cases, *see, e.g.*, *Louise Trauma Ctr. v. DHS*, No. 21-cv-2371, 2024 WL 3251225, at *4 (D.D.C. July 1, 2024), that the Center is a front for the collection of attorney's fees, Opp'n 7–8. The Center has filed an eyebrow-raising number of FOIA suits like this one. *See* Opp'n at 8 (collecting cases). Indeed, the list of such cases in the government's opposition brief is longer than the explanation of work the Center has provided in both the complaint and on its website—combined. The Center also has done a poor job of explaining *how* it furthers its mission of "raising awareness about immigrant women who have suffered from gender-based violence such as female genital mutilation (FGM), rape, domestic violence, and forced marriage" and helping women who seek asylum. Compl. ¶ 4. It appears that

4

the Center merely uploads to its website various records that it obtains from FOIA cases and offers no analysis of the records.  Nor does the Center appear to offer any other assistance to immigrant women, such as housing or other support.  When directed by the Court to "explain[] the specific ways in which the Center furthers its asserted mission,"  Min. Order of July 29, 2024, the Center's counsel referred the Court to articles he has written that discuss records produced in similar FOIA suits and to third parties' discussions of the Center's successful FOIA requests,  *see* Pl. Response to Court Order, Dkt. 63 at 2–3.  On this meager record, it is hard to discern how immigrant women benefit from the Center's work.  Even so, the government has fallen short in substantiating its theory that the Center is a front for the collection of attorney's fees, and therefore "the Court will not address it further."  *Louise Trauma Ctr.*, 2024 WL 3251225, at *4.

Last, the fourth factor favors the government.  It considers whether the government has "been recalcitrant in its opposition to a valid claim or otherwise engaged in obdurate behavior." *Davy*, 550 F.3d at 1162.  Throughout the parties' negotiations, each party registered complaints and made concessions.  But the Court sees nothing that rose to the level of obduracy on the part of the government.  Moreover, the Center has dropped any contests to the government's remaining withholdings, suggesting that it has ceded that no valid claims remain.  *See* Joint Status Report of Nov. 20, 2023, Dkt. 56.

Balancing these factors, the Center is entitled to a fee award.  It is a "requester[] who seek[s] documents for public informational purposes"—that is, the type of plaintiff that the FOIA attorney's fees award provision exists to reward.  *Davy*, 550 F.3d at 1160.

## C.   Reasonableness of Fees

The Center is eligible and entitled to attorney's fees—but only "reasonable" attorney's fees.  5 U.S.C. 552(a)(4)(E)(i).  "In determining whether fees are reasonable, courts ordinarily

focus on two questions: (1) whether the attorneys charged a reasonable hourly rate and (2) whether the time attorneys logged on the case was reasonable—*i.e.*, did the attorneys waste or otherwise unnecessarily spend time on the matter." *In re Donovan*, 877 F.2d 982, 990 (D.C. Cir. 1989). Both issues are contested here.

1.    *Reasonableness of Rate*

The determination of the rate is a straightforward matter.    The parties agree that the Fitzpatrick Matrix supplies the applicable rates.[1]    *See* Opp'n at 15; Reply at 24, Dkt. 62 (abandoning argument for the Laffey Matrix).    Only one dispute about the rate remains.    The Center submits that the Court should apply the 2024 rate for hours in all foregoing years, as compensation for the delay in payment, Reply at 23–24; the government contend historical rates apply, Opp'n at 10–12.    On this issue, the Court has no discretion.    "The Supreme Court has made it plain that absent an explicit waiver of sovereign immunity, attorneys' fees awarded against the federal government must be based on historical rates." *Save Our Cumberland Mountains, Inc. v. Hodel*, 857 F.2d 1516, 1525 (D.C. Cir. 1988) (en banc) (internal quotation marks omitted).    FOIA contains no such waiver of immunity.    Accordingly, the Court will apply the following historical rates, which reflect the Fitzpatrick Matrix rates for a lawyer with over 35 years of experience: 2020 ($731.00/hour); 2021 ($736.00/hour); 2022 ($760.00/hour); 2023 ($807.00/hour).    Mot. Ex. D, Dkt. 55-4.

---

[1] Judge McFadden previously awarded the Center's counsel fees at "a rate considerably below" the Fitzpatrick Matrix, on the ground that the Fitzpatrick Matrix is typically used for litigation of greater complexity than is presumed of standard FOIA cases.    *E.g.*, *Louise Trauma Ctr. v. DHS*, 2023 WL 3478479, at *5 (D.D.C. May 16, 2023).    Because no party has raised the possibility of such a reduction here, the Court will apply the Fitzpatrick Matrix rate.

2.      *Reasonableness of Hours*

Although the Center is eligible for attorney's fees, the Court will decline to award it any fees because its request is patently unreasonable.  A plaintiff bears the "burden of establishing the reasonableness of its fee request," and its "supporting documentation must be of sufficient detail and probative value to enable the court to determine with a high degree of certainty that such hours were actually and reasonably expended."  *Role Models Am., Inc. v. Brownlee*, 353 F.3d 962, 970 (D.C. Cir. 2004) (alterations and internal quotation marks omitted).  The Center has failed to do so here.  Its fee request is not only grossly excessive, it is plagued with deficiencies and, most gravely, flouts multiple courts' reprimands of counsel's inappropriate billing practices.  When a plaintiff submits an outrageously unreasonable request, a court may decline to award fees as a means of sanctioning attorney misconduct and deterring similar behavior.  *See Env't Def. Fund v. Reilly*, 1 F.3d 1254, 1258 (D.C. Cir. 1993).

The deficiencies in the Center's fee request fall broadly into two categories.  The first is that the time records are vague, inadequately descriptive, or made in error.  "Attorneys who anticipate making a fee application must maintain contemporaneous, complete and standardized time records which accurately reflect the work done by each attorney."  *Citizens for Responsibility and Ethics in Washington v. FEC*, 66 F. Supp. 3d 134, 148 (D.D.C. 2014) (citation omitted).  When attorneys fail to do so, it becomes "impossible for the court to verify the reasonableness of the billings, either as to the necessity of the particular service or the amount of time expended on a given legal task."  *In re Sealed Case*, 890 F.2d 451, 455 (D.C. Cir. 1989).  This problem arises in several ways:

- Several entries are plainly erroneous.  Counsel seeks fees that are ten times higher than what appears justified for certain activities.  For instance, counsel billed "2." hours for

reviewing a Joint Status Report on September 23, 2022, even though preceding and subsequent entries for the same or similar tasks reflect one-tenth of that time. *Compare* Mot. Ex. C at 9 ("9/23 2. R&R of ecf 36") *with id.* at 9 ("10/21 .2 R&R of ecf 37"). Similarly, counsel billed "2." hours for reviewing a 66-page file on February 7, 2023, when all other similar entries on that day reflect time billed for fractions of an hour. *Compare id.* at 10 ("2. review of 66 page file") *with id.* at 10 (".3 review of 83 page file"). The Court's conclusion that these entries are erroneous is bolstered by counsel's apparent practice of including a zero at the end of a whole-hour entry, *see id.* at 10 ("1.0 draft MSJ"), and his inclusion of other similarly incorrect entries, *see id.* at 10 (" . Email to TQ"). In total, the plaintiff's counsel over-billed for at least 10.8 hours by misplacing the decimal point in four separate time entries. *See id.* at 9 ("9/23 2. R&R of ecf 36"); *id.* ("9/26 3. Study of JSR"); *id.* at 10 ("2/7 . . . 2. review of 66 page file"); *id.* at 14 ("7/11 . . . 5. R&R of 6 page Declaration of Cindy Munita").

- The overall number of hours claimed is also unclear. Counsel claims to have expended 236 hours on this case. Mot. at 27. Yet he lists 250.3 hours in his itemization of work. *See* Opp'n at 19 (citing Opp'n Ex. E, Dkt. 61-5). The Court cannot know which hours the Center has chosen not to claim and is left guessing.

- A few entries are so unclear that the Court cannot discern what work was performed. On November 13, 2020, counsel spent 0.1 hours on "Memo to file," without explanation. Mot. Ex. C at 3. This same phrase pops up elsewhere in the itemization, also without explanation. *See, e.g.*, *id.* at 4. On May 16, 2021, the Center spent 0.3 hours on "Rev of file," with no specification as to which file or its purpose. *Id.* at 5. On September 17, 2021, counsel spent 2.1 hours "reading pages," with no specification as to which pages or how

many. *Id.* at 6.  And on June 13, 2023, he spent 0.2 hours on "emails ±," using a symbol unfamiliar to the Court. *Id.* at 13.

- Further, even though the modal entry contains slightly more detail—*see, e.g.*, *id.* at 3 (billing 0.2 hours on "email to OC about narrowing"); *id.* at 9 (billing 1.6 hours on "R &R of records"); *id.* at 11 (billing 1.7 hours on "reviewing entire file")—the entries are still unclear.  To quote Judge McFadden, "counsel's billing records teem with ambiguous entries." *Louise Trauma Ctr.*, 2023 WL 3478479, at *7.

- Oddly, some entries list no time billed, despite descriptions that suggest that work was performed.  For example, on November 14, 2020, counsel spent 0.0 hours on "Westlaw research on FOIA; recent cases." Mot. Ex. C  at 3; *see also id.* at 7 (billing 0.0 hours for "Westlaw research on fees; recent cases").  If time was, in fact, expended, then the submission of 0.0 hours casts further doubts on the consistency and accuracy of counsel's billing practices.

- Counsel's handling of the Court's minute orders is inconsistent.  Approximately thirty times during this litigation, the Court published a one-sentence minute order that read, "Upon consideration of the parties' [] Joint Status Report, it is ORDERED that the parties shall file another joint status report on or before [a date]."  Remarkably, on two occasions, counsel billed 18 minutes for "receipt and review" of such a minute order.  *See id.* at 3, 9. At other times, counsel billed no time for reviewing minute orders.  Most often, however, he billed something in between.  He provides no explanation for the wide variation in these entries.

- Some hours are seemingly unclaimed without explanation.  Counsel claims no hours for the drafting of three jointly filed status reports: Dkts. 21, 26, and 48.  This absence is

inconsistent with his billing practice for similar joint status reports.  *See, e.g.*, *id.* at 6 (billing 0.5 hours for "rev of proposed JSR").  Likewise, even though counsel apprised the Court in several joint status reports that he was reviewing disclosed records, the itemization reveals no contemporaneous claimed hours.  *Compare, e.g.*, Joint Status Report of July 14, 2021, Dkt. 19, *with* Mot. Ex. C. at 6 (billing no hours between July 4 and September 14).  These omissions fall short of the standard for accurate and standardized billing.

The second categorical deficiency with the Center's fee request is that it is grossly out of line with requests in similar cases, reflecting an extraordinary lack of billing judgment.  Attorneys are entitled to compensation only for "reasonable" expenditures of time, and a court must "exclude hours that are excessive, redundant, or otherwise unnecessary."  *Louise Trauma Ctr.*, 2023 WL 3478479, at *6.  The grossly excessive billing arises in several ways:

- Counsel claims to have spent 236 hours—that is, 29.5 entire workdays—litigating this FOIA case, in which no motions (except the instant motion) were filed and in which the agencies resolved the Center's requests largely by making the requested disclosures.  While the parties plainly spent time negotiating the agencies' withholdings, their post-pleading filings consisted of periodic status reports, which varied only slightly with each iteration.  Simply put, this straightforward case should not have taken counsel so much time.

- Similarly, counsel represents that approximately one-third of his claimed hours, or 85 hours, were spent on records review.  But, as other courts have explained, records review is not compensable because a lawyer "would have performed that task even in the absence of litigation."  *Urban Air Initiative*, 442 F. Supp. 3d at 324; *see Am. Immigr. Council v. DHS*, 82 F. Supp. 3d 396, 412 (D.D.C. 2015) ("[T]he cost of reviewing documents produced in response to a FOIA request—to see if they are responsive or for other

10

reasons—is simply the price of making such a request. The Court will thus deduct these charges as well."); *Coffey v. Bureau of Land Mgmt.*, 316 F. Supp. 3d 168, 172 (D.D.C. 2018) (holding "time spent reviewing documents released by" the responding agency "is not compensable").

- Counsel also claims hours for clerical work, such as "hand-serving US Attorney," "checking Post Office website for service of process," and "double-checking secretary's work." Mot. Ex. C at 2. These clerical tasks do not merit compensation near a thousand dollars an hour. *See Role Models Am., Inc. v. Brownlee*, 353 F.3d at 973 ("[P]urely clerical or secretarial tasks should not be billed [even] at a paralegal rate regardless of who performs them.").

- Counsel claims 8.3 hours for preparing the complaint even though he lifted text verbatim from the Center's complaints in prior actions. *See, e.g.*, Complaint, Dkt. 1, *Louise Trauma Ctr. v. DHS*, No. 20-cv-1128 (D.D.C.). The case-specific language, such as the description of the FOIA requests, was altered, but the rest of the complaint is virtually identical to the Center's earlier complaints. To seek more than eight hours for copying, pasting, and making minor, case-specific alterations to previous complaints is excessive.

- Counsel also claims hours for refreshing his memory on this case. *E.g.*, Mot. Ex. C at 13 (billing 0.1 hours on "reviewing file, to refresh, recollection about recent history of the case"); *id.* at 6 (billing 1.8 hours on "rev of entire file; refresh recollection; evaluation of same; determine what is missing and still to be done"). "The agency should not be billed for counsel's reading and re-reading of his own pleadings and FOIA requests." *Louise Trauma Ctr.*, 2023 WL 3478479, at *6.

- Counsel claims hours for work on individual status reports, although the Court explicitly instructed the parties to file status reports jointly.  Nonetheless, on six occasions, counsel disobeyed and filed his own report without the agencies.  *See* Dkts. 28, 30, 42, 44, 46, and 49; *see also* Gov't Status Report at 1, Dkt. 47 (representing that the Center was responsible for the filing of separate reports).  Time spent on status reports filed in contravention of the Court's orders does not merit compensation.

- Moreover, even for joint status reports, the Center claims far too much time.  For instance, counsel claims 5.0 hours for work related to the September 23, 2022 joint status report, *see* Mot. Ex. C. at 9,which was an iteration of a previous status report and which, per the agencies, contained "*no* substantive input by Plaintiff."  Opp'n at 30 (emphasis added). Further, the agencies contend that the work on status reports generally fell to them, as they were providing updates about records review and release, and that counsel for the Center rarely added new comments.  *Id.* at 29.  Thus, counsel's claimed 10.6 hours of joint-status-report work is not justified.

- Finally, the Center claims hours for a default judgment motion that it never filed.  It is certainly possible that work on this motion propelled negotiations forward, *see* Reply at 20.  Still, "the court must not award fees for unnecessary work."  *Elec. Privacy Info. Ctr. v. DHS*, 811 F. Supp. 2d 216, 239 (D.D.C. 2011). The Court cannot know the effect of the unfiled motion on the parties' deliberations, but against the backdrop of counsel's other billing deficiencies, the Court is, to say the least, skeptical of his claim.

Across the board, the Center has failed to justify the deficiencies of its award request. Its reply brief is as disorganized as its submission of claimed hours.  Rather than address the agencies' arguments point by point, counsel repeatedly deflects, randomly rebutting just a few with skeletal

12

responses.  For example, in response to the agencies' observation that the Center's complaint resembles that of a previous lawsuit and should not have taken eight hours to write, counsel states, "[C]ounsel should be accurate and precise in a Complaint. He should not rush. Eight hours is in accord with other cases."  Reply at 22.  The statement is evasive and non-responsive.  With responses like this, the Court has little choice but to assume that counsel has no explanation for his questionable practices.

Furthermore, this is not the first time that the Center's counsel has been reprimanded for his improper billing practices. Last year, Judge McFadden reduced the Center's fees in another FOIA case by 40%, citing "significant inefficiencies and a lack of billing judgment."  *Louise Trauma Ctr.*, 2023 WL 3478479, at *6–7.  Just a couple of months ago, Judge Bates imposed a 50% reduction on the Center, citing "improperly and excessively billed time." *Louise Trauma Ctr.*, 2024 WL 3251225, at *8.  Rather than addressing the same deficiencies that other judges on this Court have identified, counsel continues to engage in the same pattern of overbilling.  Moreover, his fee requests have increased over time, even as his substantive legal workload has decreased. In the 2023 case before Judge McFadden, the Center twice moved for summary judgment and responded to motions for summary judgment.  Dkts. 11, 18, 25, 29, *Louise Trauma Ctr. v. DHS*, No. 20-cv-1128 (D.D.C.).  In the 2024 case before Judge Bates, the Center cross-moved for summary judgment. Dkt. 29, *Louise Trauma Ctr. v. DHS*, No. 21-cv-2371 (D.D.C.).  In the instant action, however, the Center filed no motions at all apart from the instant motion.  Even so, counsel requests his highest fees to date by no small margin.  In the 2023 case, the Center sought $201,844, and Judge McFadden awarded $106,098, *Louise Trauma Ctr.*, 2023 WL 3478479, at *3–8; in the 2024 case, it sought $111,664, and Judge Bates awarded $43,895, *Louise Trauma Ctr.*, 2024 WL 3251225, at *1; now, it seeks *$249,452*, its largest award yet.

Aside from tweaking a previously-filed complaint and signing a series of largely government-produced status reports, counsel performed minimal work in this case, far less than what would support an award of $249,452 in fees.  Counsel's practice of increasing his fee requests following court-imposed reductions to his earlier requests smacks of the kind of bad-faith bargaining tactic properly deterred by the denial of a fee award.  *See Baylor v. Mitchell Rubenstein & Assocs., P.C.*, 857 F.3d 939, 954 (D.C. Cir. 2017) (Henderson, J., concurring) ("If a party seeks more than [a reasonable attorney's fee]—making an excessive demand in the hopes that the award, although short of the demand, will be artificially high—a district court can impose a sanction to deter future violations and to protect the integrity of its proceedings.  In particular, the court has discretion to deny an award altogether . . . .").  As the D.C. Circuit has emphasized, "overbilling the government [is] a serious transgression, damaging to the public fisc and violative of the trust reposed in each member of the bar." *See Env't Def. Fund v. Reilly*, 1 F.3d at 1260.  A court has discretion to entirely deny a "request for an outrageously unreasonable amount, lest claimants feel free to make unreasonable demands, knowing that the only unfavorable consequence of such misconduct would be reduction of their fee to what they should have asked for in the first place." *Id.* at 1258 (internal quotation marks omitted); *see Jordan v. DOJ*, 691 F.2d 514, 518 (D.C. Cir. 1982) ("[T]he court may, as a means of enforcing the applicable standards, deny a fee motion when the submission is 'manifestly inadequate.'"); *Baylor v. Mitchell Rubenstein & Assocs., P.C.*, 857 F.3d at 957 (Henderson, J., concurring) (collecting cases).  The Center's counsel not only demands a sum that is plainly excessive for this relatively simple litigation, he also engages in the same unreasonable and improper billing practices for which he has been admonished repeatedly by this Court.  Because the Center's counsel continues to submit increasingly exaggerated fee requests, the Court will exercise its discretion to deny attorney's fees "as a means of encouraging counsel

to maintain adequate records and submit reasonable, carefully calculated and conscientiously measured claims." *Jordan*, 691 F.2d at 518 (internal quotation marks omitted).

## CONCLUSION

For the foregoing reasons, the plaintiff's Motion for Attorney's Fees is denied.  A separate order consistent with this decision accompanies this memorandum opinion.

DABNEY L. FRIEDRICH
United States District Judge

September 18, 2024